IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **COLOGIX COL5, LLC,** : | |
| : | Case No. 2:22-cv-4280 |
| **Plaintiff,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | Magistrate Judge Jolson |
| **655 DEARBORN PARK LANE, LLC,** : | |
| : | |
| : | |
| **Defendant.** : | |

## **OPINION & ORDER**

This matter comes before the Court on Plaintiff's Motion for Judgment on the Pleadings. (ECF No. 15). For the following reasons, this Court **GRANTS** Plaintiff's Motion (*Id.*).

### I. BACKGROUND

#### A. Factual Background

This case arises from an agreement between Plaintiff Cologix Col5, LLC ("Cologix") and Defendant 655 Dearborn Park Lane, LLC ("Dearborn"). Cologix is a Delaware limited liability company with its principal place of business in Denver, Colorado. Dearborn is a limited liability company doing business in Ohio with its principal place of business located in Columbus, Ohio (ECF No. 4). On August 16, 2022, Cologix and Dearborn entered into an agreement for the sale of property located at 655 Dearborn Park Lane, Columbus, Ohio 43085. (*Id.*). Cologix was to purchase the property from Dearborn for the purpose of developing a data center facility on the property. (*Id.*). Such centers require access to a significant amount of energy. After conducting due diligence following the agreement and before the sale, Cologix determined that it could not obtain sufficient electrical energy to the property to support the planned data center facility. (*Id.*).

1

Pursuant to Section 4.2 of the agreement, Cologix deposited an Earnest Money Deposit of $300,000 with the Title Company. Section 4.2 provided that "if this Agreement is terminated by Purchaser pursuant to Section 8.1 hereof, then one hundred percent (100%) of the Earnest Money Deposit will be paid by Title Company to Purchaser." (*Id.*). Section 8.1 of the agreement set forth the terms for termination, providing in relevant part:

> Notwithstanding anything to the contrary set forth in this Agreement, this Agreement may be terminated at any time prior to Closing: … (ii) At any time prior to the expiration of the Inspection Period by Purchaser *if Purchaser is not satisfied as a result of its due diligence of the Property* (as reasonably demonstrated to Seller) that the Property can be developed by Purchaser as a data center facility (including, without limitation, as it relates to title or survey matters, zoning, available utility power to the Property or environmental issues) (each, a 'Due Diligence Failure')….

(ECF No. 15 at 2, emphasis added). As a result of its conclusion that the property would not be suitable, Cologix sought to terminate the agreement and recover its Earnest Money Deposit pursuant to Section 8.1(a)(ii) on October 26, 2022. (ECF No. 4 at 4). Dearborn, however, refused to return Cologix's $300,000 deposit and argued that Cologix must proceed with the closing of the agreement. (ECF No. 15 at 6). During the weeks that followed the delivery of the termination notice, Cologix explained to Dearborn why it was not satisfied:

> To help you understand our decision, I am willing to state that one of the biggest concerns with any data center is the ability to obtain sufficient electrical power to the Property. For this property, we believe that electrical power would come from AEP via high voltage lines from the west. However, given the placement of the gas distribution pipeline (and the related easement) we weren't satisfied that AEP could deliver the necessary power to the Property—we weren't satisfied that AEP could locate its power lines around the gas pipeline easement. As a result, we weren't satisfied that we could develop the property as a data center, and we properly terminated the Agreement during the Inspection Period.

(*Id.* at 5). Dearborn nonetheless refuses to return the deposit.

### B. Procedural Background

Plaintiff has now filed suit with this Court to resolve the dispute over the agreement. At issue here is the interpretation of one section of the sale and purchase agreement, Section 8.1, which outlines the conditions under which Cologix could lawfully terminate the agreement. Cologix interprets Section 8.1 to mean it only had to provide notice that it was not satisfied, while Dearborn interprets that section to impose further obligations on Cologix. Cologix filed its initial complaint on December 5, 2022. (ECF No. 2). Dearborn answered, and the parties engaged in pretrial conferences before the United States Magistrate Judge during the early portion of 2023. On April 14, 2023, Cologix filed the motion *sub judice* (ECF No. 15), to which Dearborn properly responded. (ECF No. 18). Dearborn's response asks this Court for specific performance of the agreement or, in the alternative, money damages. (ECF No. 18 at 2). Cologix seeks enforcement of Section 8.1 and attorney's fees. (ECF No. 15 at 3). This motion is now ripe for review.

### II. STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is filed, the Court analyzes the motion using the same standard as a Rule 12(b)(6) motion to dismiss. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005) (citation omitted). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). And

although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Finally, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017); *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019).

While *Twombly* does not preclude a party from pleading factual allegations based upon "information and belief," the complaint should indicate that "the facts are peculiarly within the possession and control of the defendant, or . . . the belief is based on factual information that makes the inference of culpability plausible." *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Pleading on information and belief may be permissible "when a plaintiff may lack personal knowledge of a fact, but have sufficient data to justify interposing an allegation on the subject or be required to rely on 'information furnished by others." *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *6 (S.D. Ohio Sept. 1, 2016).

### III. LAW & ANALYSIS

#### A. Section 8.1

This case turns on the language of Section 8.1 of the Agreement because that language sets forth the conditions that must be met in order for Cologix to terminate the Agreement prior to closing. Section 8.1 states, in relevant part:

> Notwithstanding anything to the contrary set forth in this Agreement, this Agreement may be terminated at any time prior to Closing: … (ii) **At any time prior to the expiration of the Inspection Period by Purchaser if Purchaser is not satisfied as a result of its due diligence of the Property** (as **reasonably demonstrated** to Seller) that the Property can be developed by Purchaser as a data center facility (including, without limitation, as it relates to title or survey matters,

> zoning, **available utility power** to the Property or environmental issues) (each, a 'Due Diligence Failure')….

(ECF No. 15 at 2, emphasis added). This Court takes each requirement in turn.

The record clearly shows that Cologix communicated its dissatisfaction to Dearborn prior to the expiration of the Inspection Period. The "Inspection Period" was defined in the agreement as "[w]ithin 90 days of Purchaser's receipt of the Effective Date," which is to say within 90 days of August 16, 2022, making the end of the Inspection Period November 14, 2022. (ECF No. 15 at 2). On October 26, 2022, well before the end of the Inspection Period, and repeatedly in the weeks that followed, Cologix explained to Dearborn that it was not satisfied as a result of its due diligence: "[W]e weren't satisfied that AEP could deliver the necessary power to the Property … As a result, we weren't satisfied that we could develop the property as a data center, and we properly terminated the Agreement during the Inspection Period." (*Id.* at 5). Accordingly, Cologix properly exercised its right under Section 8.1 to terminate the Agreement as a result of its dissatisfaction.

The next inquiry is whether Cologix "reasonably demonstrated" its dissatisfaction to Dearborn. The Sixth Circuit has held that notice "need only be such as informs the seller that the transaction is claimed to involve a breach." *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 825 (6th Cir. 1978) (quoting Uniform Commercial Code § 2-607). Some courts and commentators have "taken the liberal view that almost any kind of notice of dissatisfaction is sufficient. "Quite clearly the drafters (of the UCC) intended a loose test; a scribbled note on a bit of toilet paper will do."" *Id*. (quoting J. WHITE & R. SUMMERS UNIFORM COMMERCIAL CODE 347 (1972)). *See e.g., Lewis v. Mobil Oil Corp.*, 438 F.2d 500, 509 (8th Cir. 1971); *Metro Investment Corp. v. Portland Rd. Lumber Yard, Inc.*, 263 Or. 76, 501 P.2d 312 (1972). Here, Cologix informed Dearborn of its dissatisfaction on no less than three separate occasions. Dearborn contends that

5

Cologix's first two notices were inadequate, pointing to a pair of emails from Cologix on October 26, 2022, stating "We've concluded that the location of easements across the property will prevent us from developing the property as intended," and "I believe it is a gas pipeline easement, but I can verify." (ECF No. 22 at 15). These notices meet the "need only be such as informs the seller" requirement, as they certainly informed Dearborn that Cologix was dissatisfied. Even if the October 26 notices were not adequate, the November 1 notice from Cologix – which is still prior to the Inspection Period deadline of November 14 – goes into greater detail:

> To help you understand our decision, I am willing to state that one of the biggest concerns with any data center is the ability to obtain sufficient electrical power to the Property. For this property, we believe that electrical power would come from AEP via high voltage lines from the west. However, given the placement of the gas distribution pipeline (and the related easement) we weren't satisfied that AEP could deliver the necessary power to the Property—we weren't satisfied that AEP could locate its power lines around the gas pipeline easement. As a result, we weren't satisfied that we could develop the property as a data center, and we properly terminated the Agreement during the Inspection Period.

(ECF No. 15-3 at 5). There can be no question that Cologix reasonably demonstrated to Dearborn, on multiple occasions, that it was dissatisfied with the property.

Dearborn goes on to argue that Section 8.1 required more of Cologix to terminate the Agreement. Principles of contract interpretation do not allow this Court to rewrite a contract by reading into it an intent not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). As discussed *supra*, the "clear language" of Section 8.1 stipulates that the purchaser may terminate the Agreement "if Purchaser is not satisfied as a result of its due diligence of the Property (as reasonably demonstrated to Seller)." (ECF No. 15 at 2). Dearborn argues that in order for Cologix to demonstrate its dissatisfaction, it must provide a series of extraneous, detailed documents, including independent

6

third-party reports and analyses. (ECF No. 15 at 19). Dearborn's full list of requirements is as follows:

> To demonstrate its dissatisfaction, Cologix needs to provide an opinion of an independent third party showing how and why it is not possible to run the appropriate power lines to or relocate the gas line on the Property. To the extent doing so is possible but there is a cost involved, we would like to understand that cost. We would expect to see a development plan and other information that demonstrates (a) the location of the easement and electrical lines at issue, (b) an analysis regarding the alternatives for placement of the electrical liens at issue (including communications with AEP), why the alternatives are unworkable, and the cost involved if alternative lines are possible, (c) an analysis of re-routing the gas line and the cost involved, (d) an analysis showing that the power supply currently being delivered to the Property is insufficient for Cologix's needs and operation of a data center facility, and (e) confirmation through Cologix's communications with AEP that the source of electrical power required for the development plan for the Property necessarily must come from the west (as opposed to Cologix's mere belief that is the source of the power).

(ECF No. 15 at 19-20). Section 8.1, however, does not impose these requirements upon Cologix. Section 8.1 merely requires a reasonable demonstration of Cologix's dissatisfaction, which it provided through a series of notices to Dearborn in October and November of 2022. Thus, Plaintiff has satisfied the contractual requirements set forth in Section 8.1.

### B. Count I: Declaratory Judgment

Cologix seeks declaratory judgment that the contract was terminated; that it is entitled to the return of the Earnest Money Deposit and any interest; that it is entitled to legal fees; and that Dearborn instruct the title company to release 100% of the Earnest Money Deposit to Cologix. (*Id.* at 1). The Federal Declaratory Judgment Act states simply that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party…" 28 U.S.C. § 2201. As this Court has explained, declaratory judgments inhabit the overlap of the doctrines of both standing and ripeness. *Goleta Nat'l Bank v. O'Donnell*, 239 F. Supp. 2d 745, 751 (S.D. Ohio

7

2002). "The concept of standing addresses the question of who is a proper party to litigate a particular suit; the related concept of ripeness addresses the question of when a court should adjudicate a particular dispute." *Id.* at 750 (emphasis in original).

In order to establish standing to bring an action for declaratory judgment, "a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). As the Supreme Court noted in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), "[b]asically the question in each case is whether the facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 273. The threatened injury need not be consummated before the suit is filed, but, future injury "must be almost certain to occur; a mere speculation is insufficient." *O'Donnell*, 239 F. Supp. 2d at 752; *see also Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) (noting that declaratory judgment is inappropriate where the threat of future injury rested "on a string of actions the occurrence of which is merely speculative"). Similarly, the concept of ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review. *Magaw*, 132 F.3d at 280.

Here, not only is there a case or controversy, Cologix has suffered or will suffer actual harm in the form of a debit of $300,000 if a finding is made for Dearborn. By refusing to issue a return of the Earnest Money Deposit, Dearborn has harmed Cologix. Further, if Cologix does not receive its deposit, future injury is certain to occur in the form of lost funds; there is no speculation.

Finally, Cologix seeks to recover its attorney's fees from Dearborn. Section 14.18 of the agreement provides that "if any lawsuit or arbitration or other legal proceeding arises in connection

8

with the interpretation or enforcement of this Agreement, the prevailing party therein shall be entitled to receive from the other party the prevailing party's costs and expenses, including reasonable attorney's fees incurred in connection therewith, in preparation therefor and on appeal therefrom, which amounts shall be included in any judgment therein." (ECF No. 15 at 3). Therefore, this Court finds that Cologix, as the prevailing party herein, is entitled to recover its costs and expenses, including reasonable attorney's fees, from Dearborn. Plaintiff's Motion on Count I is **GRANTED**.

### C. Count II: Breach of Contract

Likewise, Cologix seeks judgment on its breach of contract claim that Dearborn breached the contract by refusing to accept Cologix's termination and by refusing to the return of the earnest money Cologix deposited. (ECF No. 15 at 1). A breach of contract claim requires: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and, (4) damages or loss to resulting from the breach. *Kline v. Mortg. Elec. Registration Sys., Inc.*, No. 16-3932, 2017 WL 3263745, at *8 (6th Cir. Aug. 1, 2017). Here, it is not in dispute that a valid contract existed between Cologix and Dearborn. Cologix signed the contract with Dearborn and performed its obligation to deposit the Earnest Money Deposit in accordance with Section 4.2 of the agreement. (ECF No. 4). Section 8.1 provided that "if this Agreement is terminated by Purchaser pursuant to Section 8.1 hereof, then one hundred percent (100%) of the Earnest Money Deposit will be paid by Title Company to Purchaser." (ECF No. 15 at 12). When Cologix, as the Purchaser, terminated the agreement pursuant to Section 8.1, Dearborn breached the contract when it did not return the 100% of the Earnest Money Deposit.

As discussed *spura*, Section 8.1 of the agreement set forth the terms for termination, providing that "(ii) At any time prior to the expiration of the Inspection Period by Purchaser *if*

9

*Purchaser is not satisfied as a result of its due diligence of the Property* (as reasonably demonstrated to Seller) that the Property can be developed by Purchaser as a data center facility" (ECF No. 15 at 2, emphasis added). As a result of its due diligence, Cologix sought to terminate the agreement and recover its Earnest Money Deposit pursuant to Section 8.1(a)(ii) on October 26, 2022. (ECF No. 4 at 4). Dearborn, however, refused to return Cologix's $300,000 deposit and argued that Cologix must proceed with the closing of the agreement. (ECF No. 15 at 6). Cologix satisfied its obligation under Section 8.1. Accordingly, Cologix is entitled to a return of its deposit under Section 4.2, which provides that "if this Agreement is terminated by Purchaser pursuant to Section 8.1 hereof, then one hundred percent (100%) of the Earnest Money Deposit will be paid by Title Company to Purchaser." (ECF No. 4). Dearborn's refusal to comply with its obligation to accept Cologix's termination and return the Earnest Money Deposit amounts to breach, resulting in damages of 100% of the Earnest Money Deposit to Cologix, plus interest. Accordingly, this Court finds that Dearborn breached its contract with Cologix. Plaintiff's Motion on Count II is **GRANTED**.

### D.  Pre-Judgment Interest

Plaintiff requests pre-judgment interest in relation to its Earnest Money Deposit. (ECF No. 15 at 16). Awards of prejudgment interest compensate a beneficiary for the lost interest value of the money that was wrongfully withheld. *Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 618 (6th Cir. 1998). The Sixth Circuit has "long recognized that the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles." *Id.* at 616. Ohio's prejudgment calculation method stipulates that interest be paid at the rate per annum determined pursuant to the "federal short-term rate," which is the rate of the average market yield on outstanding marketable obligations of the United States with remaining periods to maturity of

three years or less. *See* Ohio Rev. Code § 1343.03. As of March 18, 2024, the federal short-term rate is 4.71%. Internal Revenue Serv., Publishing Division, *Internal Revenue Bulletin: 2024-10* (March 4, 2024), https://www.irs.gov/irb/2024-10_IRB. Accordingly, Plaintiff is due pre-judgment interest at a rate of 4.71% per annum beginning on the date that Plaintiff's Earnest Money Deposit became due back to Plaintiff.

### E. Post-Judgment Interest

Plaintiff also seeks post-judgment interest in relation to its Earnest Money Deposit. (ECF No. 15 at 16). Post-judgment interest is calculated pursuant to 28 U.S.C. § 1961(a). *See Gillette Co. v. Save & Disc. LLC*, 2016 WL 3745764, at *11-12 (S.D. Ohio July 13, 2016). In calculating post-judgment interest, the rate of the 52-week Treasury Bill is the appropriate rate. *Id.* (citing 28 U.S.C. § 1961); *Isaac Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998). As of March 15, 2024 this rate was 4.82%. U.S. Dept. of Treasury, *Daily Treasury Bill Rates* (March 15, 2024), https://home.treasury.gov/resource-center/data-chart-center/interest-rates/TextView?type=daily_treasury_bill_rates&field_tdr_date_value=2024. Compounded annually, this yields $39.61 in interest per day.[1] Accordingly, Plaintiff is entitled to post-judgment interest from the date judgment is entered at a rate of $39.61 per day, until the judgment is paid.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Counts I and II are **GRANTED** and Dearborn is **ORDERED** to return Cologix's Earnest Money Deposit, the associated pre-judgment and post-judgment interest, and Cologix's fees and costs, including reasonable attorney fees incurred in connection herewith.

---

[1] 0.0482/365 x $300,000 = $39.61.

Within fourteen days of this Order, Plaintiff is to submit its Motion detailing the amount of pre-judgment and post-judgment interest, calculated as prescribed above, its fees and costs, and the amount of its reasonable attorney fees, with supporting documentation. Defendant will have fourteen days to respond. Further reply will not be necessary.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 18, 2024**